IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                Plaintiff,

                                      Civ. Action No.
    vs.                              6:08-CV-1197 (NPM/DEP)


FALLS COURT PROPERTIES COMPANY
MORRIS WINKLER, GEORGE H, KIDNEY, JR.

                Defendants.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

HARRIS BEACH LAW FIRM      DAVID P. MARTIN, ESQ.
One Park Place                LAUREN H. SEITER, ESQ.
4th Floor
300 South Street
Syracuse, NY  13202

FOR DEFENDANTS:

BERSANI LAW OFFICE         FRANK A. BERSANI, ESQ.
24 Harrison St.              RYAN ABEL, ESQ.
308 Syracuse Building
Syracuse, NY 13202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff United States of America has commenced this action

seeking foreclosure in connection with mortgaged property owned by

defendant Falls Court Properties Company ("Falls Court"), and now

requests the appointment of a temporary receiver to manage the

mortgaged property during the pendency of the action.  Defendants

oppose plaintiff's application, contending that there has been no default

under the mortgage and that the appointment of a receiver would result in

unnecessary expense and could cause defendants to suffer irreparable

harm.  For the reasons set forth below, though with some reluctance, I

recommend that plaintiff's motion be granted.

I.     BACKGROUND

       The property at the center of this controversy is a fifty-unit residential

complex known as Falls Court Apartments, and located in Little Falls, New

York, and is part of a rent subsidy program operated under the auspices

of the United States Department of Housing and Urban Development

("HUD").  Winkler Aff. (Dkt. 10) ¶¶ 7, 9.   The complex has been

continuously under the same ownership since the late 1970s,  and is

managed by Morris Winkler, one of the general partners in Falls Court and

a named defendant in the action.  *Id.* ¶ 12.  According to defendants, and

plaintiff does not argue otherwise, the physical property associated with

the complex is in satisfactory condition.  *Id.* ¶¶ 10-11.

     In December of 1978 plaintiff, acting on behalf of the Rural Housing

Service ("RHS"), an affiliate agency of the Farmers Home Administration,

and in turn of the Department of Agriculture, provided defendant Falls

Court with a fifty-year mortgage loan in connection with the Little Falls

property in the principal amount of $925,000.00, with an annual interest

rate of 8.75%.  Martin Aff. (Dkt. No. 8-2) Exh. 2.  Under the terms of the

mortgage given by defendant Falls Court, in the event of a default on the

loan plaintiff is granted the option of accelerating the entire indebtedness,

and to have a receiver appointed for the property.  *Id.* ¶ 21.  The mortgage

does not define the term "default."

     This foreclosure action appears to be an outgrowth of a

longstanding dispute between the parties centering principally upon

whether Winkler is a suitable manager of the property.  Winkler Aff. (Dkt.

10) ¶¶ 16-20.  Winkler initially managed the property without incident from

the late 1970s until the late 1980s, when he began to experience health

problems, at which time his partner, defendant George H. Kidney, Jr.,

assumed the management role.  *Id.* at ¶ 12.  In 1995 or 1996, however,

defendant Kidney was debarred from government programs and therefore

found ineligible to continue managing the property; as a result, defendant

Winkler resumed management responsibility for the complex.  *Id.* at ¶ 15.

In or about December of 1996, defendant Winkler was also debarred

by RHS based upon certain criminal conduct of his partner, defendant

Kidney.  Winkler Aff. (Dkt. No. 10) Exh. B.  Winkler appealed that

determination administratively, resulting in the issuance of a decision

dated April 9, 1997 by an administrative law judge within the United States

Department of Agriculture vacating the debarment decision as arbitrary,

capricious and an abuse of discretion.  *Id.*

On April 24, 2001, RHS issued a notice to Falls Court advising that it

was exercising its option to accelerate the mortgage loan, citing the

debtor's failure to 1) submit an acceptable management plan; 2) have

annual budgets approved; and 3) properly account for project funds and

unauthorized disbursements, as the reasons for acceleration.  Plaintiff

claims that $969,451.32 in principal and interest is currently due and

owing on the loan, though it concedes that there are no real property

taxes in arrears as of March 11, 2009.  Martin Aff. (Dkt. 8-2) ¶ 4.

According to plaintiff, defendants have not made any payments

toward the mortgage loan since May 27, 2001.  Martin Aff. (Dkt. No. 8-2) ¶

7.  Defendants readily acknowledge that they are in arrears with regard to mortgage payments but offer, as an explanation, their assertion that once the notice of acceleration was issued they were explicitly instructed by RHS not to make any further loan payments.  Winkler Aff. (Dkt. No. 10) ¶ 3.  Defendants state further that they have maintained funds, currently holding in excess of $300,000 in their general account, to make the required mortgage payments, but that RHS will not accept any payments despite the availability of earmarked monies for that purpose.  *Id.*  ¶¶ 3, 25.  According to defendants, RHS has also arbitrarily rejected their proposed management plans and budgets, failed to cooperate with defendants in their oversight of the project, and asserted without justification that Falls Court did not have "acceptable management," all in an apparent effort to manufacture a default situation.  Winkler Aff.  (Dkt. 10) ¶¶ 16-20.

To vindicate its position, in May of 2002 Falls Court commenced an action against RHS in the United States Court of Claims; that action, however, was subsequently dismissed for lack of subject matter jurisdiction.  *Id.* at ¶ 18.  Falls Court thereafter filed suit on March 14, 2003 against plaintiff in this court, *Cazenovia Village, et. al. v. United States*

*Department of Agriculture*, 03-CV-0316 (NPM-DEP), alleging that RHS

had engaged in a course of conduct intended to hinder the effective

management of the property, including by its failure to approve

appropriate and acceptable management plans and annual budgets, and

failure to cooperate in any reasonable fashion with the management of the

project.  In that action Falls Court sought damages in the amount of

$750,000.00 as well as an order directing the United States to approve

appropriate budgets and other necessary plans and documents related to

the project.[1]  Walker Aff. (Dkt. No. 10) Exh. A.  The court's file in that

action was closed in anticipation of a full settlement of the parties'

differences.  The dispute between Falls Court and RHS, however,

unfortunately remains unresolved.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action in New York State Supreme Court,

Herkimer County, seeking foreclosure with respect to the Falls Court

property.  Notice of Removal (Dkt. No. 1) ¶ 1.  By notice dated November

7, 2008, defendants removed the action to this court.  *Id.*  On November

---

[1]     The plaintiffs in that action also included Cazenovia Village Apartments
Company and Chittenango Housing for the Elderly, partnerships owning two separate
apartment complexes that also received funding from RHS.  Winkler Aff. (Dkt. No. 10)
Exh. A.  Both of those properties have since been sold.  *Id.* ¶ 19.

13, 2008, following that removal, defendants served an answer with counterclaims.  Dkt. No. 2.  In their counterclaims, defendants allege that management plans, budgets and other required project documentation have been properly submitted to plaintiff, but that plaintiff has nonetheless refused to cooperate and to recognize defendant Winkler as an acceptable manager of the property, thereby causing defendants to suffer damages including, *inter alia*, through the loss of rents and tenants, in excess of two million dollars.  *See id.*

On March 18, 2009, nearly five months after commencement of the action, plaintiff moved for the appointment of a temporary receiver to assume management of the mortgaged property.  Dkt. No. 8.  In support of the motion, the government has submitted the affidavit of its counsel, David P. Martin, Esq., sworn to on March 17, 2009, with attached exhibits.[2]  Dkt. 8.  While plaintiff's motion does not identify a receiver to be appointed, the court has been informed that plaintiff requests the

---

[2]      Rule 7.1(a) requires, with certain exceptions not relevant here, that all motions be accompanied by a memorandum of law, supporting affidavit and proof of service. *See* N.D.N.Y.L.R. 7.1(a).  Rule 7.1(a)(2) further provides: "[a]n affidavit must not contain legal arguments but must contain factual and procedural background that is relevant to the motion the affidavit supports."  N.D.N.Y.L.R. 7.1(a)(2).  Plaintiff's moving papers do not comply with these requirements, in that they fail to include a supporting memorandum of law, and instead include their legal arguments in an attorney affidavit.

appointment of Louis G. Fournier, III, president of the Sutton Companies, as the receiver.[3]  Defendants oppose the appointment of a temporary receiver as an unnecessary expense, and additionally on the ground that it may cause them to suffer irreparable harm.  Dkt. No. 10.

III.   DISCUSSION

The mortgage given by defendants with respect to the Falls Court property provides, in relevant part, that

> [s]hould the Borrower DEFAULT on any of its obligations under any Loan instrument, . . . without Notice the Government may . . . (d) have a receiver appointed for the property who may exercise the usual powers of receivers in similar cases . . . .

Martin Aff. (Dkt. 8-2) Exh. 2, ¶ 8 (Complaint) Exh. D, ¶ 21.  Speaking to such a mortgage provision New York law, which governs the plaintiff's application, directs that

> [a] covenant "that the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver," must be construed as meaning that the mortgagee, his heirs, successors or assigns, in any action to foreclose the mortgage, shall be entitled, without notice and without regard to adequacy of any security of the debt, to the appointment of a receiver of the rents and profits of the premises covered by the mortgage; and the

---

[3]     There is no indication of the fees that would be charged by Mr. Fournier for his services.

> rents and profits in the event of any default or
> defaults in paying the principal, interest, taxes,
> water rents, assessments or premiums of
> insurance, are assigned to the holder of the
> mortgage as further security for the payment of the
> indebtedness.

N.Y. Real Prop. Law ("RPL") § 254 (McKinney 2006).

While on its face section 254 requires that the mortgage provision in issue be read to authorize the appointment of receiver without notice, and seemingly without regard for any showing of need, the Second Circuit has recognized that "courts have considerable equitable discretion in reviewing applications" under that section.[4]  *See Foxfire Enterprises, Inc. v. Enterprise Holding Corporation*, 837 F.2d 597 (2d Cir. 1988)(per curiam)(citations omitted).  When exercising this discretion courts must be mindful that while there is no automatic entitlement to appointment of a receiver, an application for such relief should not be denied unless the circumstances warrant such a determination as a matter of equity.  *Fed. Deposit Ins. Corp. v. Vernon Real Estate Inv.*, 798 F.Supp. 1009, 1012 (S.D.N.Y. 1992) ("In situations where a receiver will serve no useful

---

[4]      In their opposition to plaintiff's motion, defendants argue that it should be construed as seeking a preliminary injunction, and thus held to the rigorous standard associated with such motions under Rule 65 of the Federal Rules of Civil Procedure. *See* Defendants' Memorandum (Dkt. No. 10-6) at pp. 1-2.  The court is unaware of any authority which would superimpose the familiar, preliminary injunction standard upon the requirements of New York RPL § 254.

purpose, the Court may decline to appoint a receiver.")  *Fed. Home Loan Mortgage Corp. v. Jerwin Realty Assocs.*, No. CV-92-4626 (CPJ), 1992 WL 390264, *2 (E.D.N.Y. Dec. 14, 1992)(citing *Fairmont Assocs. v. Fairmont Estates*,  99 A.d.2d 895, 896, 472 N.Y.S. 2d 208, 210 (3d Dep't 1984)).  It should be noted, however, that in recognition of the fact that the purpose of a receiver is to ensure the conservation of the premises for both the owner's and the mortgagee's benefit, appointment of a receiver may be denied where it would result in the debtor incurring unnecessary expense.  *Jerwin Realty Assocs.*, 1992 WL 390264, at *2.

       This case presents a serious dispute as to whether defendants have in fact defaulted under the subject mortgage, thus giving rise to plaintiff's right to accelerate the mortgage and seek appointment of a receiver. Defendants attribute plaintiff's acceleration of the loan to the agency's dissatisfaction with defendant Winkler as a manager of the property, and maintain that their efforts to provide RHS with required management plans and other documents, including audited financial statements reflecting the finances associated with the complex, have been consistently rebuffed by plaintiff.  Significantly, the parties' disagreement over these matters is longstanding; although plaintiff claims that the default dates back to April

of 2001, it did not commence this foreclosure action until seven and one half years later in October of 2008, and even then did not immediately seek the appointment of a receiver, suggesting that the fear of imminent dissipation of assets is not the motivating force behind plaintiff's application.  Plaintiff counters that it was not in a position to bring the foreclosure action until final Director review of the determination of the United States Department of Agriculture as to defendants' default, which was not issued until March 27, 2008.

Defendants maintain, and plaintiff has not disputed, that the mortgaged property, which has been continuously managed by defendant Winkler for more than a decade, is in excellent physical condition, and that Falls Court has had the funds necessary to make capital improvements. Winkler Aff. (Dkt. 10) ¶ 11.  Defendants assert that the property manager, defendant Winkler, is taking aggressive steps to abate the fifty-six percent vacancy, which he attributes in large part to the poor economy in the Little Falls region, and that he has filled four previously vacant units in the last two months.  *Id.* at ¶ 22.

Defendants also somewhat convincingly argue that appointment of a receiver in this case would result in no significant benefit to either the

debtor or the mortgage lender, but conversely would result in both parties

incurring unnecessary additional expense.  As the current manager of the

property, Winkler receives a management fee of $65 per unit, calculated

based upon the number of units which are occupied, with defendants

noting that the occupancy rate has varied somewhat recently but generally

averages approximately fifty percent.  Winkler Aff. (Dkt. No. 10) ¶ 22.

Winkler points out that under the terms of engagement of the same

temporary receiver as is now recommended by the plaintiff for Falls Court,

who was appointed by agreement to manage the other two properties

previously controlled by defendants, the receiver was paid a higher rate

per unit each month, and that compensation was based upon the total

number of units, regardless of the occupancy rate.  *Id.* ¶ 21.  Defendants

contend that under the circumstances, not only would appointment of a

receivership result in the parties incurring much higher fees, but payment

under such an arrangement would provide a disincentive to increase

occupancy and, correspondingly, rent proceeds available to make capital

improvements and pay down the mortgage loan.

Defendants also argue that they would be irreparably harmed if a

temporary receiver is appointed.  According to defendants, RHS has

refused to allow Falls Courts to make capital improvements to the subject property using funds in its reserve account, even though Falls Court maintains a balance in its reserve account in the maximum amount permissible, $92,500.00, or one percent of the mortgage loan amount.  *Id.* at ¶ 25.  Defendants fear that if a receiver is appointed, Falls Court will lose control of its general and reserve accounts, and that the receiver will be authorized by plaintiff to use the money in Falls Court's general account for capital improvements, or other expenses, resulting in depletion of the monies that Falls Court has accumulated for payment of the mortgage, currently in excess of $300,000.00.  *Id*.  Plaintiff has not addressed this argument.

These factors are somewhat troubling.  The measures which RHS has taken lend some credence to defendants' assertion that they are essentially attempting to manufacture a default and undermine defendants' efforts to manage the Falls Court apartment complex and comply with their obligations under the mortgage given to plaintiff.  At best, the circumstances described by the parties highlight a significant breakdown in communications between lender and borrower.

While somewhat disinclined to grant plaintiff's application, I am

mindful of the relatively minimal burden cast upon a lender whose mortgage includes a covenant for the appointment of a temporary receiver when seeking such relief.  The appointment of receiver serves an important function of protecting assets pledged as security for a debt and permits the lender to preserve income and control expenses associated with the operation of the property in question.  *Jerwin Realty Associates*, 1992 WL 390264, *2; *see also First New York Bank for Business v. 155 E. 34 Realty Co.*, 158 Misc.2d 658, 661 (Sup. Ct. N.Y. Co. 1993)("[A] receiver in a mortgage foreclosure action 'is an officer fo the court and not an agent of the mortgagee or the owner (whose) duty is to preserve and operate the property within the confines of the order of appointment and any subsequent authorization granted him by the court . . . .'").  I conclude that given the circumstances surrounding this matter appointment of a receiver to achieve these purposes is appropriate, and would not result in undue and irreparable hardship to defendants, as property owners.

IV.   SUMMARY AND RECOMMENDATION

The record now before the court establishes that upon making a mortgage loan to defendants, plaintiff received the benefit of a covenant providing for appointment of a temporary receiver in the event of a default.

14

While questions persist regarding the circumstances leading up to it, I conclude that plaintiff has facially established the existence of such a default.  In light of the covenant as well as my finding that the competing equities does not clearly reflect that no useful purpose would be served by appointing a receiver, I recommend that plaintiff's application be granted. Accordingly, it is hereby respectfully

RECOMMENDED, that plaintiff's motion for appointment of a temporary receiver (Dkt. No. 8) be GRANTED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993); it is further hereby.

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      May 7, 2009
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

15